CASE 45—PETITION ORDINARY—JANUARY 16.

# City of Louisville vs. Higdon.

### APPEAL FROM JEFFERSON CIRCUIT COURT.

1. Under the charter of the city of Louisville, the common councilmen are only chosen for one year, and aldermen for two years from the day of their general election. They cannot hold over beyond that period, and their acts, resolves, and ordinances, as legislative officers of the city, after the expiration of their terms of office, are void, and in nowise operative or binding upon the city.

2. A board of common councilmen for the city of Louisville were elected at the general election of city officers on the 4th of April, 1857, and organized for business on the 10th of the same month. On the 6th of April, 1858, they concurred in a resolution which had on the 18th of March passed the board of aldermen. A new board of common councilmen were elected at the general election on the 3d of April, 1858, who organized for the transaction of business on the 8th of the same month. *Held*—That the resolution was inoperative and void, the term of office of the board of common councilmen who concurred in its passage having expired on the 4th of April, 1858.

A. M. STOUT, for appellant, cited *City Charter of Louisville,* (*Sess. Acts* 1850–1,) *art.* 3, *secs.* 4, 6, 8, 13 ; *Ib.*, *art.* 4, *secs.* 1, 8 ; *Ib.*, *art.* 1, *sec.* 1 ; *Ib.*, *art.* 9, *sec.* 1 ; 10 *Paige,* 223 ; 1 *J. J. Mar.*, 206 ; *Constitution Ky.*, *art.* 2, *secs.* 2, 3, 20.

HELM & BRUCE, for appellee, cited 9 *Johnson,* 147 ; 6 *Cowen,* 23 ; 12 *Mod. R.*, 256 ; 2 *Kent's Com.*, 295 ; *Angell & Ames on Corporations, page* 274 ; 3 *Litt.*, 459 ; 1 *Mon.*, 86.

JUDGE STITES DELIVERED THE OPINION OF THE COURT:

Higdon sued the city of Louisville for six hundred dollars, alleged to be due him from the city for work done upon its streets at the request of the city authorities, and which work, he avers, was accepted and ordered to be paid for by a resolution of the city council.

The city answered, denying the performance of the work at the request of its authorities, and also denying the alleged indebtedness, and the acceptance of the work or order for the payment of the same.

The law and facts were submitted to the circuit judge, who decided against the city, and gave judgment for the sum

claimed; and the correctness of that decision is questioned by this appeal.

The only evidence introduced upon the trial was a copy of the resolution relied upon by the plaintiff, as showing, not only the performance and acceptance of the work, but likewise its value and the order of payment.

The case must therefore turn upon the validity and effect of this resolution. If adopted by the constituted authorities of the city—that is, by the aldermen and common councilmen, who constitute what is called the general council of the city—in such manner as the charter of the city demands, it must be deemed an official recognition of the indebtedness claimed by the appellee, and sufficient to uphold the judgment. If, however, as is contended by appellant, it was not the act of the city council, but of persons assuming without authority to act as common councilmen, and whose term of office had expired before the passage of the resolution, then it is entitled to no such effect against the city; and, in the absence of other evidence in support of the claim, the judgment against the city was erroneous, and a new trial should have been granted.

The agreed facts show, that at a general election for city officers held on the 4th April, 1857, it being the first Saturday in that month, a full board of common councilmen—sixteen in number—and four aldermen, were elected; that the city council composed of this board of councilmen elect, and the board of aldermen, made up of aldermen holding over and those just elected, met and organized for business on the 10th of the same month; that the resolution in question originated in the board of aldermen on the 18th of March, 1858, and was concurred in by the board of councilmen already mentioned, on the 6th April, 1858, two days after the expiration of one year from the date of their election.

It likewise appears, that on the 3d April, 1858, it being the first Saturday in that month, another general election for city officers was held, and a new board of councilmen, and four new aldermen were elected, who met and organized as the city council, for the transaction of business, on the 8th of the same month. And also, that on that day the said resolution was

returned by the mayor of the city to the board of councilmen, not signed or approved of, but with his objections to the same. No further action seems to have been had upon the resolution or the objections of the mayor.

Was the action of the city council upon the resolution valid and binding upon the city?

It is not doubted that the subject-matter of the resolution was within the power and control of the council, when it originated in the board of aldermen. Nor is it doubted that the action of that branch of the general council was regular and lawful. But the passage of the resolution by the aldermen was not enough to impart validity to it as the act of the general council. It was indispensable that the councilmen should concur in its adoption. And the question is, whether there was such concurrence by a legally constituted board of councilmen?

The charter of Louisville, approved March, 1851, (*Sess. Acts* 1850–51,) may be aptly termed the constitution of the city—its organic law.

It divides the corporate powers into distinct departments—legislative, executive, and judicial—and defines the powers, functions, and duties of each. It provides certain officers for the several departments, prescribes their duties and qualifications, and not only fixes their terms of office, and when and how they shall be elected, but with equal precision declares when their powers shall cease.

In reference to the chief executive officer of the city, as well as subordinate ministerial officers—after saying for what periods they shall be elected—the charter provides that they shall remain in office " until their successors are elected and qualified." (*Secs.* 1–8, *art.* 4.)

But not so in regard to aldermen and common councilmen, who constitute the legislative branch of the city government.

As to this class of officers, the fourth section of article three of said charter provides as follows: .

" Common councilmen shall be chosen for one year, and *no longer*, and aldermen for two years, and *no longer*, from the day of their general election; but the board of aldermen first

elected under this charter shall, within three months after their election, divide themselves by lot into two classes—first and second—as nearly equal as may be in point of numbers; and the seats of the members of the first class shall be vacated at the *end of the first year*, and the seats of the members of the second class shall be vacated *at the end of two years* from the day of their general election; and the seats of members thus vacated shall be filled by election of the qualified voters in their several wards, at the annual general election for members of the general council."

The language of this section in regard to the time for which the officers therein mentioned shall be elected, and the mode in which the first and second class of aldermen shall be chosen, and shall vacate their seats, is so distinct and unequivocal as to admit of no construction. The intention of the framers of the charter is so clearly expressed as to leave no room for doubt.

Common councilmen are only chosen for one year, and aldermen for two years from the day of their general election—they cannot hold over beyond that period, and their acts, resolves, and ordinances, as legislative officers of the city, after the expiration of their terms of office, are void, and in nowise operative or binding upon the city.

The board of common councilmen, who assumed to give validity to the resolution in question by a concurrence with the board of aldermen in which it originated, were, as we have seen, elected on the 4*th April*, 1857. They were chosen for one year from that day, *and no longer*. Their term of office expired on the 4*th April*, 1858, and from that day their powers were at an end. They had no more right to act as common councilmen on the 6*th day* of April, 1858, than any other citizens of Louisville; and their attempt on that day to give validity to a previous resolution of the board of aldermen by a vote of concurrence, was an assumption of authority unauthorized by law, and void.

The only official action upon the resolution was on the 18th March, 1858, by the aldermen, and as there was no legal concurrence by the councilmen, it amounted to nothing, and could

not affect the city for any purpose whatever. The subsequent return of the resolution by the mayor was not necessary to render it inoperative—it was not in a condition to be submitted to him, having failed within proper time to receive the concurrence of the common councilmen. It was void and ineffectual without his veto.

The judgment is therefore *reversed*, and cause remanded for a new trial and further proceedings not inconsistent with this opinion.